512 A.2d 785

Wendell Murray, Petitioner *v.* Fred W. Jacobs et al., Respondents.

Argued February 3, 1986, before Judges CRAIG and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Frederick I. Huganir*, Assistant Public Defender, for petitioner.

*Robert A. Greevy*, Chief Counsel, with him, *Arthur R. Thomas*, Assistant Chief Counsel, for respondents.

OPINION BY JUDGE COLINS, July 17, 1986:

Wendell Murray (petitioner) seeks review of an order of the Pennsylvania Board of Probation and Parole (Board) which recommitted him to prison for twelve (12) months backtime. Petitioner alleges that he was denied his right to counsel and his right to a hearing within a reasonable time; therefore, he posits, the Board's order should be reversed. The issue before this Court is whether either or both of these rights were improperly denied petitioner and, if so, what the appropriate remedy should be.

The record presents the following factual scenario. Petitioner was originally convicted for the offense of

robbery, violation of the Uniform Firearms Act, and delivery of drugs, for which he was sentenced to serve seven and one-half (7-1/2) to fifteen (15) years, with minimum and maximum expiration dates of April 21, 1984, and October 21, 1991, respectively. Petitioner was released on parole effective April 21, 1984. Unfortunately, he was unable to return to society without incident, and he was arrested on November 10, 1984, on the charges of retail theft and resisting arrest. These charges emanated from an incident involving petitioner's shoplifting a single package of cigarettes. Petitioner was held in the Cumberland County Prison, and he did not post bond relative to the new charges.

On April 30, 1985, petitioner appeared before Judge HOFFER of the Court of Common Pleas of Cumberland County and entered a plea of guilty to retail theft. The charge of resisting arrest was withdrawn by the District Attorney at this time. He was sentenced to a term of five and one-half (5-1/2) to twenty (20) months running from the date of incarceration (November 10, 1984); having served this sentence, he was granted immediate parole. The order of the trial court specifically stated "[i]t appearing that the defendant has served this sentence, we place him on parole *to the state detainer as soon as the officials can pick him up.*" (Emphasis added.)

Petitioner was transferred to a State Correctional Institution on May 7, 1985. A hearing was scheduled for June 17, 1985; however, the hearing was continued at the Board's request. It was rescheduled and held on August 26, 1985, resulting in the Board's order to recommit petitioner.[1]

---

[1] Petitioner further filed an application for stay of the Board's order with this Court. On December 13, 1985, Senior Judge LEHMAN granted the stay and ordered the petitioner discharged from confinement.

Petitioner first argues that he was denied his right to counsel at the August 26, 1985 hearing. The right to counsel is a statutory right. *Coades v. Pennsylvania Board of Probation and Parole,* 84 Pa. Commonwealth Ct. 484, 496, 480 A.2d 1298, 1305 (1984). It is well-settled that under Pennsylvania law a parolee is entitled to assistance of counsel at the Board's revocation hearing and to free counsel if indigent. *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973); *Commonwealth v. Tinson,* 433 Pa. 328, 249 A.2d 549 (1969). Of course, petitioner may waive his right to counsel, provided that such waiver is sufficient to satisfy a test of fundamental fairness under Pennsylvania law. *Coades* at 499, 480 A.2d at 1305. The Board's regulations require that a parolee be informed of his right to counsel at two stages of revocation proceedings. Prior to a hearing, he must be informed of his right to counsel, his right to free counsel if indigent, and that he will not be penalized for requesting counsel. 37 Pa. Code §§71.4(3)(ii)-(iii). At the hearing, the Board's regulations provide:

> If a parolee appears without counsel at the hearing, it shall first be determined that he understands his right to counsel, his right to free counsel if he is unable to afford counsel, and that he shall not be penalized for requesting counsel. If the Examiner is satisfied that the refusal of counsel by the parolee is knowingly, intelligently, and freely made, he shall then accept and make a part of the record a written waiver to that effect.

37 Pa. Code §71.4(5)(iv).

While the record does contain a signed waiver of representation of counsel, dated May 7, 1985, on a form this Court has previously approved, *Coades,* it is equally clear that this waiver was revoked. Counsel for peti-

tioner appeared for the hearing of June 17, 1985, which was continued indefinitely. Counsel was also given notice on August 23, 1985, of the August 26, 1985 hearing. More telling is the following dialogue from the revocation hearing of August 26, 1985:

Mr. Moul: On May 7, 1985, you signed a waiver of a representation by counsel.

Mr. Murray: May 7th?

Mr. Moul: May 7th. Uh, hm.

Mr. Murray: No. No. No. No. I never signed that on May 7th. I never signed no papers to waive no counselor.

Mr. Moul: You never signed the waiver?

Mr. Murray: No. The only waiver I ever signed was in the county in '84.

Mr. Moul: Well, Mr. Murray, as I indicated, the, we are taping this okay? but, now as indicated here, and I have a copy of it indicates that you waived attorney representation.

Mr. Murray: Well, I want an attorney.

The Board's regulations provide that if a parolee wishes to exercise his right to counsel, then the examiner shall terminate the proceeding, and promptly reschedule such, presumably to allow for the appearance of counsel. 34 Pa. Code §71.4(5)(iv). In this case, however, the examiner proceeded throughout some twenty-five pages of the record, in an attempt to persuade the petitioner to waive his right to counsel. In fact, the record begins with the following exchange:

Mr. Murray: Are you saying I can't have an attorney?

Mr. Moul: No, I'm not saying that Mr. Murray. Let me explain to you again. What we were here scheduled for today was a revocation hearing.[2]

---

[2] Obviously, some conversation took place before this exchange concerning the petitioner's rights. While we have noted in the past

Later, the following colloquy took place:

Mr. Moul: Right, I understand that, But the Public Defender's office notified the Board that they would be unable to come today.

Mr. Murray: So what are you saying? I got to have a hearing without a Public . . . without an attorney, is that what you're saying?

Mr. Moul: No, I'm not saying that. You have the right to have attorney representation as I indicated. If you want attorney representation, you have that right. . . . If you want the hearing today, you would have to reaffirm your waiver that uh, attorney representation. If you want an attorney, it would be necessary for you to request a continuance of the hearing until at such time that an attorney can be available.

. . . .

Mr. Murray: Why are you people putting me through all this trouble? I mean why . . . you wait to the last minute to give me a hearing and now you tell me I can't have an attorney. I mean, why I mean, you know, because I have pre-aides [sic] syndrome?

In the face of the pressure to either waive his right to counsel or continue to remain imprisoned until some unarticulated period when the Board could reschedule his hearing, petitioner chose to have the hearing. The record indicates petitioner was particularly concerned

---

that counseling and inquiry regarding a parolee's right to counsel need not be accomplished on the record, *Coades* at 499, 480 A.2d at 1305, recording such facilitates our review of any challenge concerning irregularities of counseling by an examiner. We will not speculate on the content of conversation dehors the record, and if a parolee challenges the method of such counseling, we will be unable to fulfill our appellate review. This record contains sufficient dialogue for our review of this important right.

with continued incarceration while waiting for a hearing because he had pre-aids syndrome, and the treatment facilities at the correctional institution where he was housed were inadequate to treat his condition. A further delay, after already waiting for over three months for a hearing, could have been detrimental to his health. The hearing examiner could not set a date for a future hearing, and petitioner did not know how much longer he could be incarcerated without a hearing. Such consideration forced petitioner to waive counsel. The totality of circumstances in the instant case indicate that petitioner's waiver of counsel was not freely made and is, therefore, ineffective. *See Coades* (waiver of counsel must be intelligent and voluntary to be considered effective).

Since our determination that petitioner's waiver was defective is based in part on the manner in which this hearing was scheduled, we must examine the unusual circumstances surrounding the scheduling of the hearing.

Preliminarily, we note that the Board must provide a parolee a revocation hearing within a reasonable time. *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). In *United States ex rel. Burgess v. Lindsey*, 395 F.Supp. 404 (E.D. Pa. 1975), Judge HIGGINBOTTOM entered an unpublished order which set the limit of a "reasonable time" to 120 days, with certain exceptions. The Board's regulations were subsequently revised to reflect this order, and now provide, in pertinent part:

(2) The hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or *nolo contendere* of the guilty verdict at the highest trial court level except as follows:

(i) If the parolee is confined outside the jurisdiction of the Pennsylvania Bureau of Correc-

tion, such as confinement out-of-State, confinement in a Federal correctional institution, or confinement in a county correctional institution where the parolee has not waived the full Board Revocation Hearing required by *Commonwealth of Pennsylvania ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), in which case the final revocation hearing shall be held within 120 days of the official verification of the Board of the return of the parolee to a State correctional facility. The parolee, who is confined in a county correctional institution and who waived the final revocation hearing by a quorum of the Board as required in the *Rambeau* decision shall be deemed to be within the jurisdiction of the Pennsylvania Bureau of Correction beginning with the date of his waiver of such Board hearing.

37 Pa. Code §71.4(2)(i). In this case, the guilty plea was entered while petitioner was confined in a county correctional institution, and he had not yet waived his right to a full Board hearing; therefore, it would appear that the revocation hearing had to be held within 120 days of the official verification of the Board of the parolee's return to a State correctional institution.

However, this Court has specifically noted that this regulation "is not applicable where the parolee is at all times within the jurisdiction of the Board and is being held in a county institution, not at the request of the county authorities but at that of the Board itself." *Hammond v. Pennsylvania Board of Probation and Parole,* 40 Pa. Commonwealth Ct. 14, 17, 396 A.2d 485, 487 (1979); *Dobson v. Pennsylvania Board of Probation and Parole,* 41 Pa. Commonwealth Ct. 27, 30, 398 A.2d 252, 253 (1979); *Taylor v. Pennsylvania Board of Probation and Parole,* 40 Pa. Commonwealth Ct. 454, 457, 397

A.2d 849, 850 (1979). The Board contends here that May 7, 1985, the date the petitioner was literally within the confines of a State correctional institution, should be the date from which to count the 120 days. The petitioner contends that April 30, 1985, the date he pled guilty and was placed on parole by the Court of Common Pleas of Cumberland County, is the appropriate date. As of April 30, 1985, the petitioner could have left the Cumberland County correctional institution on parole, were it not for the detainer of the Board. Judge HOFFER specifically placed petitioner on parole "to the state detainer as soon as the officials can pick him up." He was, therefore, being held at the county institution as a result of Board action in the form of the detainer. He was within the Board's jurisdiction as of April 30, 1985; since he could have been returned to a State correctional institution on that date, April 30, 1985, is the date from which the Board had one hundred and twenty days to afford petitioner a hearing. As there is no "official verification" in the record as to when the Board actually learned that petitioner was within its jurisdiction, we will fix the date as that on which the Board *could* have had such official verification.

Counting from April 30, 1985, the last day on which the Board could have held a hearing was August 28, 1985. The revocation hearing was held August 26, 1985. However, while this hearing was technically held within the applicable time limit, we cannot ignore the exigencies of this case.

The petitioner had both a right to counsel *and* a right to a hearing within the 120 days. At the hearing, he was given a choice between exercising these rights: either he could waive his right to counsel, or he could waive his right to a speedy hearing. The petitioner was not in this position through some fault of his own. A hearing had originally been scheduled for June 17,

1985, and petitioner's counsel was present. This hearing was continued at the request of the Board. A terse comment in the record states: "6/17/85 Board (Riggs) refused to have hearing, because Murry [sic] has *Aids*, Isolated in hospital." (In point of fact, petitioner has pre-aids syndrome and the fact of his isolation was unchanged when the hearing was held telephonically in August). This initial postponement, resulting in a hearing so close to the expiration of the 120-day period, was solely at the instigation of the Board. It was also not the fault of the petitioner that his attorney was not present at the hearing of August 26, 1985. The record is devoid of any official notice in the record of when the attorney was notified; however, both sides concede that notice was given by phone late on Friday, August 23, 1985, informing the attorney of a hearing scheduled on Monday morning. Petitioner's attorney was not available on such short notice. Proper notice is required for administrative hearings, *Straw v. Pennsylvania Human Relations Commission*, 10 Pa. Commonwealth Ct. 99, 308 A.2d 619 (1973). If an attorney is representing a party, they must be given enough notice that they may attend with a properly prepared case. Two days over a weekend does not constitute adequate notice. The case of *Hill v. Pennsylvania Board of Probation and Parole*, 89 Pa. Commonwealth Ct. 140, 492 A.2d 80 (1985), *allocatur pending*, 179 M.D. Allocatur Docket 1985, is distinguishable. In *Hill*, the parolee felt that two days notice was inadequate for him to prepare his own defense, yet nonetheless refused a continuance. He was not in a position to be unable to attend his hearing, being in custody, and he surely could have had his defense prepared in the 118 days he was in custody prior to his hearing. It was his own lack of diligence which resulted in his difficulty. Here, the attorney did not assert that

he was not prepared to defend, but rather that he could not attend the hearing on such short notice.[3]

It has been suggested by the Board that the attorney, or petitioner, could have requested a continuance. This salient argument misses the point that if a continuance was requested, the petitioner would have to waive his right to a speedy disposition through no fault of his own. The actions of the Board placed petitioner in the position of either waiving his right to an attorney, or waiving his right to a speedy disposition. The 120-day rule is inapplicable when the person or his attorney requests a continuance, and the continued hearing is held beyond the 120-day period. *Jones v. Pennsylvania Board of Probation and Parole*, 44 Pa. Commonwealth Ct. 610, 404 A.2d 755 (1979); *Corbin v. Pennsylvania Board of Probation and Parole*, 42 Pa. Commonwealth Ct. 50, 399 A.2d 1202 (1979).

The petitioner here was told by the hearing examiner that he could not predict when the hearing could be rescheduled, and the petitioner was understandably concerned that during the interim period of unknown duration, he would be unable to get the medical care which he needed and which the prison could not supply. The fact that a hearing was scheduled before the 120-day limit does not obviate the fact that the hearing was improperly convened, and that the Board should have been aware of such, as well as the consequences for the petitioner.

We vacate the decision of the Board and remand the matter for a rehearing consistent with this opinion. This hearing shall be held within thirty (30) days of the filing

---

[3] There is no indication in the record of why the attorney could not attend; however, we must note that the Public Defender's Office of Cumberland County is a small office and cannot supply staff attorneys without adequate notice.

of this Opinion and Order. The Board is directed to schedule this hearing immediately upon receipt of this Opinion and Order, and shall provide both petitioner and counsel with notice of this hearing forthwith.

ORDER

AND NOW, July 17, 1986, the order of the Pennsylvania Board of Probation and Parole, dated November 7, 1985, is hereby vacated, and the matter remanded for a rehearing consistent with this Opinion. This hearing shall be held within thirty (30) days of the filing of this Opinion and Order. The Board is directed to schedule this hearing immediately upon receipt of this Opinion and Order, and shall provide both petitioner and counsel with notice of this hearing forthwith.

Jurisdiction relinquished.